**Owen K. RICHARDSON, Tax Assessor for Anderson County, and Anderson County, Tennessee, Plaintiffs–Appellees,**

v.

**TENNESSEE ASSESSMENT APPEALS COMMISSION, State Board of Equalization, and Coal Creek Mining and Mfg. Co., Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Sept. 10, 1991.

Rehearing Denied Oct. 1, 1991.

Permission to Appeal Denied by Supreme Court March 9, 1992.

Charles W. Burson, Atty. Gen. and Reporter and William P. Sizer, Asst. Atty. Gen., for appellants Tennessee Assessment Appeals Com'n and Bd. of Equalization.

Lewis S. Howard, Howard & Howard, Knoxville, for appellant, Coal Creek Min. and Mfg. Co.

David A. Stuart, Clinton, for appellees.

## OPINION

McMURRAY, Judge.

This action was instituted in the chancery court for Anderson County, Tennessee, to obtain judicial review of a final order of the Tennessee Assessment Appeals Commission, establishing appraisals of both surface and mineral values for lands situated in Anderson County and owned by the defendant, Coal Creek Mining and Manufacturing Company. The trial court, after a *de novo* review of the record modified the findings of the Tennessee Assessment Appeals Commission and this appeal resulted. For reasons hereinafter stated, we affirm the judgment of the trial court.

## STANDARD OF REVIEW IN THE TRIAL COURT

We will first address the question of the proper standard of review to be applied on appeal from the Appeals Commission to the chancery court. The plaintiffs insist that the proper standard of review is *de novo* pursuant to the provisions of T.C.A. § 67–5–1511(b). On the other hand, the defendants assert that the standard of review is governed by T.C.A. § 4–5–322.

T.C.A. § 67–5–1511 provides as follows:

(a) The action of the State Board of Equalization shall be final and conclusive as to all matters passed upon by the board, subject to judicial review, and taxes shall be collected upon the assessment determined and fixed by the board.

(b) Such judicial review referred to in subsection (a) shall be a *de novo* appeal to the chancery court of Davidson County or the county where the disputed assessment is made.

The Uniform Administrative Procedures Act, codified in T.C.A. § 4–5–101, et seq., provides in pertinent part as follows:

**4–5–322. Judicial review.**—(a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. ...

\*   \*   \*   \*   \*   \*

(g) The review shall be conducted by the court without a jury and shall be *confined to the record.* In cases of alleged irregularities in procedure before the agency, *not shown by the record, proof thereon may be taken by the court.* (Emphasis supplied).

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court *shall not substitute its judgment* for that of the agency as to the weight of the evidence on questions of fact. (Emphasis added).

Without question, there is a differing standard of review as between The Uniform Administrative Procedures Act and T.C.A. § 67–5–1511.

As generally understood from common usage, the term *de novo* as applied to judicial review and as contemplated by T.C.A. § 67–5–1511 [1] "means a new hearing in the chancery court based upon the administrative record and *any additional or supplemental evidence which either party wishes to adduce* relevant to any issue." [2] (Emphasis added). *Frye v. Memphis State University*, 671 S.W.2d 467, (Tenn.1984). On the other hand The Uniform Administrative Procedures Act, by its terms, restricts review to the record except for irregularities in procedure not shown by the record.

We further note that The Uniform Administrative Procedures Act, at T.C.A. § 4–5–103 provides in pertinent part as follows:

**4–5–103. Construction of this chapter.**—(a) This chapter shall not be construed as in derogation of the common law, but as remedial legislation designed to clarify and bring uniformity to the procedure of state administrative agencies and judicial review of their determination; and this chapter shall be given a liberal construction and any doubt as to the existence or the extent of a power conferred shall be resolved in favor of the existence of the power.

(b) ... In any other case of conflict between this chapter and any statute whether general or specific, this chapter shall control, however, compliance with the procedures prescribed by this chapter does not obviate the necessity of complying with procedures prescribed by other provisions of Tennessee Code Annotated.

Under these circumstances, we must decide which standard of review is applicable to the case under consideration. In so doing, we rely upon well-settled rules of statutory construction. Firstly, we are required, whenever possible, to construe potentially conflicting statutes in a manner so as to give effect to both without conflict. See *Gillis v. Clark Equipment Company*, 579 S.W.2d 869, (Tenn.App.1978), citing *Parkridge Hospital, Inc. v. Woods*, 561 S.W.2d 754, (Tenn.1978). Secondly, where "there is an irreconcilable conflict between the two statutes ... the provisions of the latter act must prevail." *Southern Const. Co. v. Halliburton*, 149 Tenn. 319, 258 S.W. 409 (1924). We conclude that T.C.A. § 67–5–1511, being the later act, is controlling with regard to the judicial standard of review by the chancery court. We further conclude that this construction of T.C.A. § 67–5–1511 in no way destroys the efficacy of The Uniform Administrative Procedures Act but simply results in an exception, thus leaving both statutes intact.

---

**1.** The attorneys have furnished the court with a transcript of the proceedings in the Senate when the *"de novo"* amendment was added to T.C.A. § 67–5–1511 (Amendment No. 4 to Senate Bill No. 1927, amendment adopted March 14, 1988.) T.C.A. § 67–5–1511 is unambiguous and, therefore, it is unnecessary to consider extrinsic matters to arrive at its meaning, we simply note that the transcript of the Senate's proceedings reinforces the conclusions of the court.

**2.** As was pointed out by Justice Harbison discussing a similar statute in *Frye v. Memphis State University*, 671 S.W.2d 467 (Tenn.1984), hereinafter cited in the body of this opinion, "this does not mean a complete repetition of all of the evidence, .... 'Review' rather than 'trial' is the wording of the statute. But it does not specify *de novo* review 'confined to the administrative record' nor does it provide for review merely by some form of certiorari."

Appellants further assert that a *de novo* review is improper because each of the parties was represented by an attorney before the Assessment Appeals Commission. Appellants attempt to distinguish between parties not represented by an attorney and those who were represented by an attorney and insist that the *de novo* review is limited to those cases where taxpayers were not represented by an attorney before the Commission. This assertion is based upon T.C.A. § 67–5–1514(i) [3] and the transcript of the proceeding of the Senate wherein the *de novo* review was adopted. The transcript reflects a concern that parties would be bound in the chancery court by a record created by a non-lawyer.[4] Assuming that this distinction could withstand a constitutional challenge, we, nevertheless, find no merit in this contention.

■ We hold that appeals to the chancery court from the Tennessee Assessment Appeals Commission are reviewable *de novo* and that T.C.A. § 67–5–1511 is the statute which prescribes the proper standard.

### OTHER ISSUES

With regard to the Appellants, Tennessee Assessment Appeals Commission and State Board of Equalization, our determination that the proper standard of review in the chancery court is *de novo*, disposes of the single issue presented by them for our consideration. Appellant, Coal Creek Mining and Manufacturing Company, has presented a total of eight issues for our

consideration. Six of the eight deal either directly or indirectly with the applicable standard of review. Thus our determination of that issue, as set out above, pretermits all remaining issues except the following:

1. The trial court erred in relating Anderson County surface value and uncontested mineral values to aggregate ad valorem values of a separate taxing jurisdiction (Campbell County) as justification for increase of the Appellant's Anderson County surface value, particularly when (i) only the surface value was at issue in the case, (ii) judicial review in this case is properly confined to tax equalization in the applicable taxing jurisdiction (Anderson County), and (iii) the mineral values of the separate counties are based on differing methods, valuation and acreage ownership and there is no proof in the record to support, and hence no basis for the trial court's finding that average per acre fee simple values for property in the two counties (Anderson and Campbell) should be the same.

2. The trial court erred in failing to award Appellant its property tax overpayments with accrued interest thereon for the years 1981–1987 as sought by Appellant in its Counter–Complaint.

More properly stated, the first issue in substance simply is: Does the evidence preponderate against the judgment of the trial court? If it does so preponderate, the issue has merit. If it does not, the issue is without merit.

---

**3.** T.C.A. § 67–5–1514(i) provides: "All other provisions of this section notwithstanding, this section shall not apply in any manner to the representation of a taxpayer by an attorney."

The amendment as originally enacted by Public Acts, Chapter 619, 1988, used the word "act" instead of "section" in the above quoted statute. Under the circumstances of this case, we attach no significance to either the difference in the Public Act and the code section or the provisions of the code section itself. Quite obviously, this subsection was intended solely to exempt attorneys from the necessity of further qualifying as a tax agent as required of non-attorneys.

**4.** Senator Haynes, speaking for the "de novo" amendment made the following remarks:

"Mr. Speaker, amendment 4 deals with one of the primary concerns that was discussed by the

committee at the time the bill was considered. This amendment number 4 would provide for a *de novo* appeal to the chancery court. And what that simply means is if we don't have this amendment you are allowing a non-lawyer to reduce and create the record before the board of equalization, but yet be bound by that record when it gets to the chancery court. Now, I am suggesting to you that amendment number 4 will correct that, and it shall provide that it be a *de novo* appeal to the chancery court, and in that sense, it could be heard and proof introduced at that chancery level which it cannot be if we don't adopt this amendment. So this removes a big problem that some of us might have as lawyers to this particular bill ..."

## OUR STANDARD OF REVIEW

■ In our consideration of the case, we are bound by the provisions of Rule 13(d) of The Tennessee Rules of Appellate Procedure, i.e. unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. However, no presumption attaches to conclusions of law. *Adams v. Dean Roofing Co.*, 715 S.W.2d 341, 343 (Tenn.App.1986).

## STATEMENT OF THE CASE

The genesis of this case was a property reappraisal in Anderson County. Anderson County established the surface value of the appellant's lands at $233.75 per acre. Aggrieved by this valuation, appellant, Coal Creek Mining and Mfg. Co., initiated the appellate process. The administrative appellate process culminated in a final judgment of the Tennessee Assessment Appeals Commission favorable to the taxpayer. Anderson County thereupon filed its complaint in the chancery court of Anderson County, seeking judicial review of the final order of the Commission. After a *de novo* hearing, the chancellor found the judgment of the Commission to be erroneous and modified the judgment to reflect an increase in the surface valuation of the property in question from $150.00 per acre to $218.00 per acre.

As observed by appellant's counsel, a brief statement regarding ad valorem assessments of property containing mineral reserves is helpful in order to put the issues at hand in perspective. Generally, for purposes of tax appraisal, assessments are made differently on real property owned in fee and having mineral content. Separate assessments are made for the "surface" values of the property and the "mineral" values of the property. In keeping with the Constitution of The State, the surface assessment, as noncommercial property, is twenty-five percent of the fair market value and the underlying mineral is assessed at forty percent of the fair market value as commercial property. Generally stated, surface values are to be established pursuant to T.C.A. § 67–5–601, et seq.

T.C.A. § 67–5–601(a) and T.C.A. § 67–5–602 provide respectively in pertinent part as follows:

**67–5–601. General Policy.**—(a) The value of all property shall be ascertained from the evidence of its sound, intrinsic and immediate value, for purposes of sale between a willing seller and a willing buyer without consideration of speculative values ...

**67–5–602. Assessment guided by manuals—Factors for consideration.**—(a) ... in determining the value of all property of every kind, the assessor shall be guided by, and follow the instructions of the appropriate assessment manuals issued by the division of property assessments and approved by the state board of equalization. ....

(b) For determining the value of real property, such manuals shall provide for consideration of the following factors:

\*   \*   \*   \*   \*   \*

(7) Natural productivity of the soil, except that the value of growing crops shall not be added to the value of the land. As used in this subdivision, "crops" include trees; and ...

■ Thus, in general terms, surface values are determined without regard to mineral value and without regard to the value of growing crops, which by statutory mandate, include trees. The mineral value must then be determined and the surface value must, then, in order to obtain true equalization, be further reduced by the value of the underlying minerals. Common sense dictates that, under ordinary circumstances, the combined market value of the surface and underlying minerals do not and cannot exceed the market value of the fee.

As relevant here, the Tennessee Assessment Appeals commission found the value of the surface to be $150.00 per acre. The chancellor, on the other hand, upon *de novo* review determined that the Assessment Appeals Commission was clearly erroneous and found the value of the surface to be

$218.00. Additionally, the chancellor found that the mineral valuation was not an issue and had not been an issue at any stage of the appellate proceedings. Indeed, the record is replete with evidence and statements of counsel that the mineral appraisal in Anderson County is not an issue. Specifically, the chancellor found " ... the fee simple value to be $330.00 per acre; from the fee simple value there should be subtracted the sum of $29.68, for the assessed valuation of minerals; additionally, the rounded sum of $82.00 per acre figure [for trees] estimated by the expert witness, Charles Rusk, should also be subtracted, leaving the base land value for tax purposes at the rounded figure of $218.00 per acre. (The $29.68 being rounded to $30.00.)" [5]

We, under our standard of review, are required to examine the record and determine whether the evidence preponderates against the findings of the chancellor. Upon consideration, we are of the opinion that it does not.

■ The way and manner in which the chancellor arrived at his valuation of the property is simple and amply supported by the record. The chancellor in his memorandum opinion accredited the testimony of appellant's expert witness, Mr. Doyle R. Monday, CMI, and accepted his fee simple valuation of the Anderson County property at $330.00 per acre. He then deducted the sum of $82.00 per acre as the value of timber as established by Charles Rusk,

(and accepted by Mr. Monday) thus resulting in a surface valuation of $248.00 per acre before deduction for the value of the underlying mineral content.

At this juncture, it appears at least, that the findings of the chancellor and the findings of the Tennessee Assessment Appeals Commission are in harmony.[6] It is only with the application of the deduction for the value of the underlying mineral content that their views become divergent. The Tennessee Assessment Appeals Commission recognized throughout the proceedings before it that, as to Anderson County, no mineral assessments were at issue. Notwithstanding, however, the commission apparently applied a deduction of $100.00 per acre as the value of the underlying mineral content of the Anderson County property as well as property located in Campbell County.[7] After so doing, the Commission found the value of the Surface to be $150.00 per acre. On the other hand, the chancellor, after applying the mineral appraisal of $30.00, from which no appeal had been taken, arrived at a value of $218.00 per acre. We find the chancellor's findings to be amply supported by the record and in accordance with the preponderance of the evidence. Accordingly, the judgment of the chancellor on the surface valuation is affirmed in all respects.

## THE COUNTERCLAIM

We must next turn our attention to the counter-claim. The appellant, taxpayer,

---

5. Apparently, the insistence of the appellant that the chancellor "erred in relating Anderson County surface value and uncontested mineral values to aggregate ad valorem values of a separate taxing jurisdiction (Campbell County) as justification for increase of the Appellant's Anderson County surface value ..." has its origin in a memorandum opinion issued by the chancellor on January 9, 1991, wherein he overruled motions which had been filed by the defendants pursuant to Rules 52.02, 59 and 59.04 of the Tennessee Rules of Civil Procedure. There, the chancellor does state "the record reflects that the land is comparable in both counties and the total fee value for land in Anderson County would be the same as the total fee value for the land in Campbell county." We note that this is an accurate statement. Mr. Monday, appellant's expert witness, places the "total fee simple value of the subject property" at $330.00 per acre in each county.

6. There is a slight difference in calculations based apparently upon a rounding to the next highest dollar.

7. The taxpayer's property lies both in Anderson and Campbell Counties. An appeal was taken to the State Board of Equalization from appraisals and assessments in both counties. The appeals were consolidated for hearing before the Tennessee Assessment Appeals Commission. Mineral valuations were an issue in the Campbell County appeal but not in the Anderson County appeal. The Mineral valuations were established at $100.00 per acre in Campbell County. The appraisal of Anderson County mineral content from which no appeal was taken was $29.68. The chancellor rounded this figure to $30.00.

Coal Creek Mining and Manufacturing Company filed a counter-complaint in the trial court seeking a judgment against Anderson County for any amounts due as a result of overpayment of ad valorem taxes from 1981 through 1987, together with interest thereon.

Proof was taken by the court on the issues raised in the counter-complaint, however, no judgment was ever entered by the court disposing of these issues. The final judgment in the introductory paragraph recited that the "cause came on to be heard on the original complaint, ... answer and counter-complaint, ... answer to counter-claim, ... amendment to counter-complaint, ... answer to counter-complaint as amended, ...," however, the counter-complaint is not thereafter mentioned.

The record contains the following colloquy between the court and counsel:

COURT: "You stipulated that the mineral values were not at issue before the commission in the Anderson County hearing and that the testimony before the commission was that the mineral values for Anderson County purposes were twenty-nine dollars and sixty-eight cents. If you want to do your calculations as to what amounts are owed, I will be glad, ... this changes the calculations."

MR. STUART: "Would it be appropriate, your honor, to enter a judgment embodying what the court has just stated and provide in there that we would either agree as to who owes who what based on that and if we cannot agree that, I am not sure how we would come back to determine. I suspect that we will be able to determine that, but should we have a mechanism in the judgment to deal with that?"

COURT: "To provide that in the event that the parties are unable to agree on what amount of refund or what amount of monies may be due, that upon motion of either party, the court will consider what further steps may be necessary to ascertain this valuation."

Apparently, and probably as a result of this appeal, there is no indication in the record that the parties either reached an agreement, attempted to reach an agreement or presented the matter to the court for further consideration. Thus, it appears that the judgment from which this appeal is taken is not a final judgment as contemplated by the Tennessee Rules of Appellate Procedure, Rule 3 and Rule 54.02 of the Tennessee Rules of Civil Procedure. Since, however, the case has been heard by this court, we, in our discretion, choose to invoke Rule 2, T.R.A.P. and treat this appeal as an interlocutory appeal.

### CONCLUSION

For reasons stated, we affirm the judgment of the trial court as to the original action and remand the case for determination of the issues presented in the counter-complaint or any other action relating thereto as may be necessary.

Costs of this appeal are taxed to the appellants.

SANDERS, P.J. (E.S.), and GODDARD, J., concur.