# FILED

**November 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| WESTVACO CORPORATION, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | Appeal No. |
| v. | ) | M1999-01226-COA-R3-CV |
| | ) | |
| TENNESSEE ASSESSMENT APPEALS | ) | Davidson Chancery |
| COMMISSION; BENTON COUNTY | ) | No. 97-1234-III |
| ASSESSOR OF PROPERTY; | ) | |
| BENTON COUNTY TRUSTEE, | ) | |
| | ) | |
| | ) | |
| Defendants/Appellants. | ) | |


COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR


PHILLIP G. HOLLIS
Peeler & Hollis
39 North Court Square
P. O. Box 218
Camden, Tennessee 38302

JERRY C. SHELTON
Lyell, Seaman & Shelton
The Tower, Suite 2704
611 Commerce Street
Nashville, Tennessee 37203
        ATTORNEYS FOR PLAINTIFF/APPELLEE

PAUL. G. SUMMERS
Attorney General and Reporter

SEAN D. CLANCY
Assistant Attorney General
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, Tennessee 37243
            ATTORNEYS FOR DEFENDANTS/APPELLANTS


                    REVERSED AND REMANDED


                                WILLIAM B. CAIN, JUDGE

                  O P I N I O N

I.      NATURE OF THE CASE

        Tennessee Assessment Appeals Commission and the Benton County
Assessor and County Trustee, (referred to collectively hereinafter as the State and
Benton County, respectively) appeal from an adverse decision below regarding the
ad valorem taxation of certain real property owned by the taxpayer, Westvaco
Corporation (Westvaco), and located in Benton County, Tennessee.  At the time of
assessment, Westvaco owned approximately 59 parcels of woodland totaling over
24,000 acres.[1]  Regarding the valuation and assessment in question, the following
facts as related by the trial court are not in dispute:

> Westvaco is a forest resource management company who
> harvests timber on its land for a papermill.  Westvaco owns
> approximately 25,000 acres in Benton County in blocks of large
> tracts of 1000 to 2000 acres.
> In 1993 the State required counties in Tennessee to conduct
> mass reappraisals.  As required, Benton County undertook such
> a reappraisal which included Westvaco's land.
> The controversy in this case is generated by Benton County
> valuing Westvaco's land by a method not used for any other
> Benton County taxpayer.  The Benton County Assessor arrived
> at his assessment of Westvaco's land by using the values
> assigned to the land under the County's 1983 appraisal and
> adding $50.00 per acre.  The justification for this method was
> testified to by Bob Farmer, the county assessor. He stated that

Westvaco had paid the taxes assessed according to the 1983 appraisal. The $50.00 per acre was added because of the system of roads Westvaco had constructed throughout its property. The assessor determined that the road system improved the property and added value which had to be accounted for on assessment. Mr. Farmer contacted the State Department of Transportation for road valuation information and contacted Westvaco for the number of miles of road (55) on Westvaco's property to come up with the amount of $50.00 per acre to account for road improvements by Westvaco. He then added that $50.00 per acre to the values assigned to the land under the county's 1983 appraisal to arrive at his assessment of Westvaco's land. To "check" the assessment, he also consulted four sales of alleged comparable clear cut-over land.

Westvaco paid the assessment and pursued its appellate remedies. Westvaco appealed the assessment in a hearing before an administrative law judge. It then appealed the ALJ's ruling to the Assessment Appeals Commission, and appealed the Assessment Appeals Commission's decision to Davidson County Chancery Court. At each stage of the administrative appeal process prior to chancery court, Westvaco was unsuccessful, and the values set by the assessor and the Benton County Board of Equalization were affirmed. The Chancellor, however, reversed the Appeals Commission and remanded the case for findings of fact not inconsistent therewith. Specifically, the order of the chancery court states the following:

> There is nothing in the record before this Court which demonstrates that the respondents' appraisal method of using the 1983 appraisal values for Westvaco's property and adding in $50.00 per acre to account for roads complies with the requirements of Tennessee Code Annotated sections 67-5-601(a) and 67-5-216. There is nothing in the record to indicate that the 1983 appraisal still reflects the measure of a willing buyer and a willing seller without consideration of speculative value. Moreover, that the State required counties in 1993 to conduct mass reappraisals is some indication that the 1983 appraisal is no longer accurate. The $50.00 per acre to account for road improvement, while perhaps some indicator of intrinsic value, is just tacked on. In sum, there simply is nothing in the record demonstrating that the method used by the respondents takes into account the factors required by sections 67-5-601(a) and 67-5-216.

* * *

As to the issues of fact pertaining to valuation which were presented to this Court through proof supplementary to the record (as permitted by Tennessee Code Annotated section 67-5-511) and from the record, the Court determines that the case should be remanded for the expertise of the administrative agency to develop the facts and further findings as to the valuation of Westvaco's property using the method outlined in Richardson, and not using the cut-over land method or the 1983 appraisal plus $50.00 per acre.

## II.      ISSUES ON APPEAL

From the order of the Chancery Court, Benton County seeks review, raising the following issues on appeal:

1.   Whether the trial court properly considered Westvaco's complaints pursuant to Tennessee Code Annotated section 67-5-1407(a)(1)(A) and (B)?

2.   Whether the Trial court was correct in its holding that the residual method of valuation, the method used by the chancery court in *Richardson v. Assessment Appeals Comm'n*, 828 S.W.2d 403 (Tenn. Ct. App.1991), was the only appropriate method to evaluate Westvaco's property for tax purposes?

3.   Whether the trial court was correct in holding that the consideration of cut-over land sales to arrive at bare land values for timberland properties did not comply with Tennessee Code Annotated sections 67-5-601(a) and 67-5-216?

4.  Whether the court erred in finding that nothing in the record before it demonstrated that the method used by Benton County and the State to value Westvaco's land in Benton County took into account the factors required by Tennessee Code Annotated sections 67-5-601(a) and 67-5-216?

The State joins in the appeal arguing simply the impropriety of the chancellors requirement that the Assessment Appeals Commission apply the residual valuation method.

For its part, Westvaco urges on appeal the allegedly unconstitutional nature

of Benton County's assessment method as well as the impropriety of a remand in light of the attendant facts. Specifically, Westvaco's brief lists the following issues:

> 1. Whether the appraisal methodology used by the Benton County Assessor and the Assessment Appeals Commission, but not used for any other woodland appraisals in Benton County, denies Westvaco equal protection under the United Stated and Tennessee Constitutions?

> 2. Whether the record clearly establishes the *ad valorem* property tax value of Westvaco's woodland, exclusive of the value of growing timber, so that this Court may fully resolve all issues in this case without necessity of the remand to the Assessment Appeals Commission as ordered by the trial court?

Considering the above issues in conjunction, we find that the answers to the following three questions are integral to the resolution of the controversy on appeal.

> 1. For the purpose of *ad valorem taxation,* does the law of this state mandate one particular method of valuation of real property over another?

> 2. Regardless of the answer to the previous question, was the method of valuation used by the Benton County Assessor consistent with the statutory and regulatory requirements concerning the accuracy of said property assessments?

> 3. Was the action of the chancellor in reversal and remand consistent with statutory authority determining the standard of review concerning appeals from administrative actions and the presumption accorded to factual findings made within the agency 's field of expertise?

In light of our negative findings with regard to the above questions one through three, we find it unnecessary to proceed to Westvaco's equal protection argument except to reiterate the statement of the Supreme Court in the case of *Allegheny Pittsburgh Coal Co. v. County Commission*, "that two methods are used to assess property in the same class is, without more, of no constitutional moment." *Allegheny Pittsburgh Coal Co. v. County Commission*, 488 U.S. 336, 343, 109 S.Ct. 633 (1989).[2]

As with any case involving taxation, before proceeding to the detailed resolution of the issues, we must place the controversy against the backdrop of *ad valorem* taxation and valuation methodology.

## III. VALUATION METHODOLOGY AND THE AD VALOREM TAX ON REAL PROPERTY

Consistent with the requirements of state law, the Benton County Assessor reappraised all real property countywide. Since Tennessee's constitution exempts from taxation the "direct product of the soil in the hands of the producer, and his immediate vendee," one can easily understand the problems that can occur in determining the surface value of land minus these products. *See* Tenn. Const. Art. 2, §28. The method of valuation of real property therefore gains crucial importance. Legislative authority on the subject of valuation for *ad valorem* taxation of real property places some limits on the process. For example and of particular interest in the instant case, this court has quoted the following:

> Generally stated, surface values are to be established pursuant to T.C.A. Sec. 67-5-601, et seq.
>
> T.C.A. Sec. 67-5-601(a) and T.C.A. Sec. 67-5-602 provide respectively in pertinent part as follows:
>
>> 67-5-601. General Policy.--(a) The value of all property shall be ascertained from the evidence of its sound, intrinsic and immediate value, for purposes of sale between a willing seller and a willing buyer without consideration of speculative values ...
>>
>> 67-5-602. Assessment guided by manuals--Factors for consideration.--(a) ... in determining the value of all property of every kind, the assessor shall be guided by, and follow the instructions of the appropriate assessment manuals issued by the division of property assessments and approved by the state board of equalization. ....
>>
>> (b) For determining the value of real property, such manuals shall provide for consideration of the following factors:

(7) Natural productivity of the soil, except that the value of growing crops shall not be added to the value of the land.
As used in this subdivision, "crops" include trees; and ...
Thus, in general terms, surface values are determined without regard to mineral value and without regard to the value of growing crops, which by statutory mandate, include trees.

*Richardson v. Assessment Appeals Comm'n,* 828 S.W.2d 403, 407(Tenn. Ct. App. 1991). In many respects however the statutes quoted above present more questions than answers regarding the *method* to be used by the taxing authority in determining the value of real property throughout the county.[3] It hardly bears noting that the best way to determine the "value" of any property, short of selling it, would be to find recent sales of "comparable" property – hence, the need for periodic reappraisal. According to the record before us, reappraisals for Benton County, as for all of Tennessee, were conducted as mass appraisals based on land schedules published by the Tennessee Division of Property Assessments. Appraiser Charles Smith of the Division testified regarding these mass appraisals. Said Mr. Smith:

Q. And what's the purpose of coming up with a mass appraisal, or Rural Land Schedule to use instead of a valuation of each tract individually?

A. Well, mass appraisal itself is unique in the fact that you have normally a large amount of parcels of land and buildings to go along with those. You have a certain time frame within which to get those things appraised. We're bound both by time and budget and by the statutes as to when these things will be done. In doing mass appraisal, rather than looking at each individual tract and doing what we term a fee appraisal on those by getting two or three [comparable sales,] three or four [comparable sales,] whatever, these are – these properties are classified into various sections or types of woodland, farmland, rotation lands, pastureland, and models are constructed, or Rural Land Schedules are built.

With regard to the proposed use of the Rural Land Schedule in Benton County, Assessor Bob Farmer testified as follows:

Q. Just generally tell me what you did to go about forming the '

93 mass appraisal Rural Land Schedule.

A. Okay. Mainly, the DPA and myself, we collected what we call good, qualified sales, to try to find the true market value of rural land that had been sold and transacted.

Q. And you did that over a period of time?

A. We tried to use no sales older than two years old.

Q. And what was your object? I mean, what were you trying to accomplish by this?
A. To get a true market value of the land that we appraised.

Q. Now, under this procedure, are there several categories of land? Do you have to divide the land into special classifications?

A. Yes they are.[sic]

Q. And on timberland, in particular, are there – is there more than one classification for timberland?

A. Yes. We had a – prior to '93, we had a type 62 woodland, good, average, and poor. From '83 to '93, DPA, approved by the State Board of Equalization, did the Rural Land Procedures Manual that had a type 61 to come out to certain properties, commercial-type, pulpwood operations. And that's where the 61 type came from, instead of 62.

Q. You've heard referred to in this hearing as managed woodland class, is that the 61 class you're speaking of?

A. That's the 61 class.

Q. And did, then, you look at properties in Benton County to determine whether or not there were any Class 61 landowners?

A. I did.

Q. And did you find that there were or were not any?

A. No one except Westvaco at the time.

Q. Did you determine that Westvaco fit within the managed woodland category?

A. I found that, yes.

The record suggests that once the Division's Rural Land Schedule is established, the task then falls to the County Assessor, to compare all property within the classes to find the appropriate value of the land minus any adjustments required by the Computer-Assisted Appraisal System Rural Land Procedures Manual. Although no particular method is mandated in preference to another in this manual, the general requirement is that timber, as a growing crop, should be considered as a negative adjustment to sales of woodland. The record below discloses two alternative methods for arriving at the timber value. One, the residual method, considers comparable, or qualified sales of property including live timber, and then subtracts from the average sales price the going rate of timber alone. In this manner the residual value of the land becomes the value upon which the tax is assessed. The other, the so-called direct comparable method seeks to evaluate the property subject to tax by comparing it to recently clear-cut property which would in all other respects be directly comparable to the subject property. At this point however, the Assessor in Benton County chose an entirely different approach. Says the Assessor on direct examination:

> What we really did, . . . . [Westvaco had] paid on the '83 schedule for ten years with no appeal. So, we knew those were good values. We added the roads on as improvements, increased value to the land, is mostly what we did. We took the cut-over– or clear-cut to back up the values we had put on there.

## IV.     APPROPRIATE STANDARDS OF REVIEW

As a general rule, courts will "defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *Wayne County v. Tennessee Solid Waste Disposal Control Board,* 756 S.W.2d 274, 279(Tenn. Ct. App. 1988). The UAPA provides clear guidance in this area. In pertinent part, section 4-5-322(h) states the following:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced

because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. §4-5-322(1998).

Our review of the court below tracks the standard enumerated by the Eastern Section in *Richardson v. Assessment Appeals Commission*. Judge McMurray, writing for the majority in that case stated the following:

In our consideration of the case, we are bound by the provisions of Rule 13(d) of The Tennessee Rules of Appellate Procedure, i.e. unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. However, no presumption attaches to conclusions of law.

*Richardson v. Assessment Appeals Comm'n,* 828 S.W.2d 403, 407(Tenn. Ct. App. 1991). In our review we are drawn to the following portion of the Commission's findings.

7. The assessor assigned an across the board value of $50 per acre for all parcels for the contributory value of these roads to the subject property. There was no valid proof that this figure was inappropriate or excessive.

8. In comparison to productivity of other land in the county, this

land is poorer than most and the subject parcels are not good land for growth of hardwood trees. There was no valid proof that the property was over assessed because of the quality of the land.

The county did not offer any evidence and contended that the appeal should be dismissed because the taxpayer did not present a prima facie case that the subject parcels had been erroneously classified and assessed. We concur.

In determining the "substantiality" of evidence, the reviewing court is required to "take into account whatever in the record fairly detracts from its weight." Tenn. Code Ann. §4-5-322(h)(5). The amount of evidence recognized to support an administrative decision, although less than a preponderance, must

amount to more than scintilla or glimmer. *See Estate of Street v. State Bd. of Equal.,* 812 s.w.2D 583, 586 (Tenn. Ct. App. 1990); *see also Wayne County v. Tennessee Solid Waste Disposal Control Board,* 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988).

Of particular import at this juncture in our analysis is the fact that no proof was put on by Benton County before the commission. Considering the presumption that attaches as well as the augmented record, we must affirm the trial court's finding that the commission's approval of Mr. Farmer's method was not supported by substantial and material evidence. To assert that the statutes cited, *supra*, support such a breadth of assessment gives a tortured meaning to the words "sound, intrinsic, and immediate value." *See* Tenn. Code Ann. § 67-5-601(a).[4] Although we agree with the findings of the chancellor regarding the "method" that Benton County used, we cannot agree with the method of assessment ordered by the chancellor.

The court below specifically relied upon *Richardson v. Assessment Appeals Commission* in holding that Tennessee requires the residual method of valuation as the only means of valuing timberland property in the state. Such reliance is misplaced. The court in *Richardson* simply affirmed the finding of the chancellor

that the residual method of valuation was proper under the circumstances of that case. Nowhere in the opinion does Richardson require only one method of valuation. In this respect the mandates of the assessment statutes are clear, and the language of the review statute, Tennessee Code Annotated section 4-5-322 is equally clear. Any recognized method supported by substantial and material evidence of the assessed property's immediate intrinsic value is sufficient.

On September 3, 1999, the Eastern Section of the Court of Appeals released its opinion in *Willamette Industries, Inc. v. Tennessee Assessment Appeals Commission, et al,* No. 01A01-9812-CH-00639, involving methods of valuation of Timberland. We find the following discussion persuasive:

> Turning first to Willamette's issue regarding the proper method of valuation, we do not find that the applicable statutory scheme, Tennessee case law, or the appraisal manual used by the County and DPA require that the residual method be utilized in the valuation of timberland. On the contrary, no authority suggests that any single method is mandated, to the exclusion of all others.
>
> Although we affirmed the lower court's use of the residual method in the *Richardson* case, we did not hold that it was the exclusive method available to the assessing agencies; on the contrary, that case simply holds that, under the facts pr[e]sented there, use of the residual method was appropriate. *See Richardson*, 828 S.W.2d at 407-08. By the same token, we are not aware of, nor have we been cited to, any other authority mandating use of a single appraisal methodology.
>
> * * *
>
> As previously explained, courts typically will defer to an agency decision where the agency is acting within its area of knowledge and expertise, *Id.* at 280, and this is particularly true where technical or scientific matters are involved. *Id.* Admittedly, the record contains evidence regarding both advantages and disadvantages of each appraisal method, as well as evidence that the residual method could, in certain instances, be the preferable means of valuation. On the other hand, it also contains credible evidence indicating that, under the circumstances of this case, the direct comparable sales method represented the appropriate choice.

*Willamette Ind., Inc. v. Tennessee Assessment Appeals Commission*, No.

01A01-9812-CH-00639, 1999 WL 684123, ** 5-6 (perm. app. filed Oct. 29, 1999).

In *Willamette*, the Tennessee Assessment Appeals Commission had used the direct comparable sales method in valuing timberland and the Court of Appeals, affirming the chancellor, held that under the evidence in the case the direct comparable sales method satisfied the requirements of Tennessee Code Annotated section 67-5-601(a).

In this case, we follow *Willamette* in holding that *Richardson* does not require that the residual method of valuation is the only method of valuation that may be used by those charged with the responsibility of assessing timberland.

## IV.    CONCLUSION

We affirm the finding of the trial court that the method used by the County Assessor is unsupported by substantial and material evidence. We must reverse that portion of the chancellor's order requiring residual valuation to be used to determine the value of Westvaco's property subject to assessment. In view of the fact that no full hearing on the merits was given Westvaco, we affirm as modified the order of the trial court and remand this case ultimately to the Assessment Appeals Commission of the State Board of equalization for findings and conclusions regarding the proper assessment of the subject property minus the timber. Costs on appeal are taxed against Benton County.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____

DAVID H. WELLES, SPECIAL JUDGE