IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 2, 2022 Session

## WILLIAMSON COUNTY, TENNESSEE ET AL. v. TENNESSEE STATE BOARD OF EQUALIZATION ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 47743    James G. Martin, III, Judge**

_____

**No. M2021-01091-COA-R3-CV**

_____

A taxpayer appealed a County Board of Equalization's property valuation to the State Board of Equalization. The State Board reduced the valuation. The County then sought judicial review. After a new hearing in which the trial court heard testimony from competing appraisers, it affirmed the State Board's valuation. It also determined that the County's request to reclassify the property was untimely. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and THOMAS R. FRIERSON II, J., joined.

Robert T. Lee, Mt. Juliet, Tennessee, for the appellants, Williamson County, Tennessee, and Brad Coleman, Williamson County Assessor of Property.

Stephen J. Jasper, and Matthew J. Sinback, Nashville, Tennessee, for the appellee, AT&T Services, Inc.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Mary Ellen Knack, Senior Assistant Attorney General, for the appellee, Tennessee State Board of Equalization.

## OPINION

### I.

In late 2013, DC402 Franklin Road LLC purchased an office building/data center located in Brentwood, Tennessee, from AT&T Services, Inc. as part of a sale-leaseback

transaction. DC402 Franklin Road paid $109,220,000 for the approximately 43-acre property. It then leased the property back to AT&T for an initial term of ten years, with three ten-year renewal options. The lease was triple net with base rent starting at $7,645,330 per year, which increased 2 percent annually. So, over the initial term, AT&T would pay total rent of $83,714,230.47 plus taxes, insurance, and maintenance.

After the purchase, Williamson County assumed responsibility for assessing the property for ad valorem tax purposes.[1] Its assessor of property assessed the property at $85,850,000 as of January 1, 2015. This assessment triggered the current dispute over the proper valuation of the property.

A.

DC402 Franklin Road appealed the assessment to the Williamson County Board of Equalization. *See* Tenn. Code Ann. § 67-5-1407(a) (2018). The County Board upheld the assessment. So DC402 Franklin Road appealed to the State Board of Equalization, identifying AT&T as its authorized representative and the taxpayer. *See id*. § 67-5-1412(a)(1) (2018).

AT&T contended the value of the property was lower than assessed. Williamson County countered that the value was actually higher than assessed. The administrative judge determined that neither party carried its burden of proof to alter the assessed value. *See* TENN. COMP. R. & REGS. 0600-01-.11 (2022) (placing the burden of proof on the "party seeking to change the current classification and/or assessment"). So it affirmed the 2015 valuation.

AT&T then appealed to the State Board's Assessment Appeals Commission. *See* Tenn. Code Ann. § 67-5-1502(a) (Supp. 2017). Again, both parties objected to the 2015 valuation. The Commission conducted a new evidentiary hearing on the valuation of the property as permitted by then-existing law.[2] It heard from four witnesses.

AT&T called James "Jimmy" Brown, Ron Neyhart, and Richard Sullivan. Mr. Brown, an AT&T employee, oversaw the data center's operations when it was sold to DC402 Franklin Road. He testified to the building's outdated infrastructure and the extensive renovations that would have been necessary for the building to meet 2015 data

---

[1] Before the purchase, the Office of State Assessed Properties, a division of the Comptroller of the Treasury, assessed the property as public utility property. *See* Tenn. Code Ann. §§ 67-5-801(a), 67-5-1301 (Supp. 2017); *see also Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 833 (Tenn. 2008).

[2] For appeals filed to the Commission before July 1, 2017, as here, the parties could provide "any additional or supplemental evidence . . . relevant to an issue raised in the appeal." TENN. COMP. R. & REGS. 0600-01-.13 (2016).

2

center standards. And Mr. Sullivan, a representative from AT&T's property tax group, said that AT&T did not intend to exercise the option to extend the initial lease term. Mr. Neyhart, an appraiser with a commercial real estate services firm, opined that the property's highest and best use was for mixed use development. Based on this use, he believed its fee simple value was $21,850,000.

Mr. Sullivan also explained the 2013 sale-leaseback transaction had "little or nothing to do with market value of the applicable propert[y]." It was a financial transaction negotiated to maximize AT&T's cash proceeds up front. AT&T often entered into such transactions, leasing the facilities back "at above-market rental rates to essentially pay back the loans." So the sales price and lease payments were linked, irrespective of the property's market value.

To support its valuation, Williamson County offered the testimony of David Horner, an appraiser in its assessor's office. He opined that the value of the property was higher than originally assessed. His valuation was based on DC402 Franklin Road's "leased fee" interest in the property, specifically its interest subject to the lease with AT&T.

The Commission issued a final decision and order classifying the property as commercial property and reducing its valuation. In reaching its decision, the Commission agreed with AT&T that the 2013 sale-leaseback was "not representative of market value." Rejecting the opinions of both parties' appraisers, the Commission arrived at its own valuation of $45,700,000.[3]

Williamson County filed a petition for reconsideration, asserting that the Commission failed to value the property in accordance with Tennessee law. Williamson County also argued, for the first time, that the property should be classified as public utility property for ad valorem tax purposes. The Commission denied the petition.[4]

B.

Williamson County and the assessor (together, "Williamson County") petitioned for judicial review. They asked the trial court to find that the fair market value of the property was $103,500,000 as of January 1, 2015, and to reclassify the property as a public utility rather than commercial property. Rather than confining themselves to the record created before the Commission, the parties retained new valuation experts and engaged in discovery.

---

[3] The Commission utilized the income approach to valuation, using data from AT&T's appraisal report.

[4] Because the State Board did not seek to review the action, the Commission's decision became the final decision of the State Board. *See* Tenn. Code Ann. § 67-5-1502(j) (Supp. 2017).

3

Williamson County's expert, Peter F. Korpacz, determined the "leased fee" value of the property based on an assumption that the sale-leaseback contract rent was "market rent" that would continue in perpetuity. And the property's highest and best use was as a data center. But he had not spoken to anyone at AT&T regarding the functional capabilities of the property in 2015 or whether AT&T intended to stay.

The appraisal also referenced DC402 Franklin Road's sale of the property to a third-party buyer in 2017.[5] As Mr. Korpacz explained, the 2017 sale was not used to value the property. Rather it showed the "demand for the property" and supported his valuation for the property as of 2015. The 2017 sale was a "portfolio sale" in which the third-party buyer purchased fourteen data centers, including the Franklin Road property, for a total price of $750,000,000. The deed conveying the Franklin Road property stated the consideration was $110,000,000. Mr. Korpacz was uncertain how the parties determined the portion of the total portfolio price to allocate to the Franklin Road property. He had not spoken with the parties about the price allocation.

In response, AT&T offered David C. Lennhoff as an expert on real estate appraisal methodology. Mr. Lennhoff testified that Mr. Korpacz's reliance on the 2013 sale-leaseback transaction was not appropriate. The transaction was a financing vehicle. And, in appraisals, sale-leaseback transactions are "appropriate to ignore" when they are financing vehicles. He also diminished the significance of the 2017 portfolio sale. In such sales, the parties may "just allocate [the total portfolio sale price] as a matter of convenience."

Mr. Brown, the AT&T employee who oversaw the data center's operations, and Russ McFadden, AT&T's vice president of portfolio management and strategy, testified about the property's condition and use. The property's infrastructure, technology, and power capabilities were all obsolete in 2015. Modernizing the property would require tearing the building down. AT&T entered into the sale-leaseback transaction because it needed time to remove the property's infrastructure while maintaining connectivity to its broader network. It never intended to renew the lease after the initial term.

Finally, AT&T offered the appraisal report and testimony of Richard Perutelli. Mr. Perutelli consulted with AT&T employees, a broker with specialized knowledge about data centers, and local zoning officials and developers. And he concluded that redevelopment, which would require demolition of the building, was the highest and best

---

[5] Although the 2017 sale occurred just a few months before the April 2018 hearing, the Commission allowed Williamson County to offer the evidence "for the limited purpose of substantiating a reasonable pre-assessment-date assumption" that the property continued to be marketable as a data center. The transaction did not affect AT&T's lease.

use for the property. For purposes of redevelopment, Mr. Perutelli valued the property at $45,700,000.[6]

Before rendering its decision, the trial court requested that the parties and the State Board of Equalization provide post-trial arguments as to the appropriate standard of review. The trial court ultimately applied a de novo standard of review based on Tennessee Code Annotated § 67-5-1511(b) and case law. *See Anderson Cnty. Tenn. v. Tenn. State Bd. of Equalization*, No. E2018-00142-COA-R3-CV, 2020 WL 762511, at *7 (Tenn. Ct. App. Feb. 14, 2020) (citing *Richardson v. Tenn. Assessment Appeals Comm'n*, 828 S.W.2d 403, 406 (Tenn. Ct. App. 1991)).

Based on this standard of review and the evidence, the trial court found the property's value was $45,700,000 as of January 1, 2015. In doing so, the court credited Mr. Perutelli's testimony and relied on his opinion of the fair market value. It noted that the Commission had independently arrived at the same valuation. It also found that the property was functionally obsolete and unmarketable as a data center in 2015. It concluded that "Tennessee law require[d] valuation of the fee simple estate available to be leased at market rate." Neither the 2013 sale-leaseback transaction nor the 2017 portfolio sale reflected the market rate.

The trial court also concluded that the property was properly classified as industrial and commercial property. Williamson County had waived the classification issue because it failed to act to reclassify the property within the statutory time limit. And even if the issue had not been waived, Williamson County had failed to establish the property should be reclassified. The court "ha[d] received little evidence demonstrating the [p]roperty's use as a public utility in 2015."

## II.

Williamson County appeals, raising three issues. The first two issues focus on the valuation of the property. The last focuses on the classification of the property. But before reaching those issues, we must address the proper standard of review.

## A.

Williamson County and AT&T agree on the standard of review. Because this case originated with a decision from the State Board of Equalization, they contend the

---

[6] Mr. Perutelli arrived at his valuation by first determining the property's value with the existing building was $47,327,940. He then deducted $2,016,000, the projected cost of demolition based on estimates obtained from local construction companies. And he added $393,000 for the value of some generators that could be salvaged. This resulted in a net value of $45,704,940, which Mr. Perutelli rounded to $45,700,000.

deferential standard of review under the Uniform Administrative Procedures Act ("UAPA") should apply. *See* Tenn. Code Ann. § 4-5-322(h) (2021). Under the UAPA, a court may reverse or modify an administrative decision only

> if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A)(i) [U]nsupported by evidence that is both substantial and material in light of the entire record;
> (ii) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

*Id.*

The State Board contends that the standard of review should be de novo. Under Tennessee Code Annotated § 67-5-1511(b), the statute providing for judicial review of State Board decisions, the review must "consist of a new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue." *Id.* § 67-5-1511(b) (2018). Here, the trial court did conduct a new hearing and the parties submitted additional evidence. The State Board reasons that receipt of additional evidence is incompatible with the UAPA standard. Judicial review under the UAPA is confined to the administrative record, except "[i]n cases of alleged irregularities in procedure before the agency, not shown by the record." *Id.* § 4-5-322(g). If the evidence on which the State Board relies must be measured by a "substantial and material" standard as required by the UAPA, the introduction of "additional or supplement evidence" would make no difference.

More importantly, the Tennessee Supreme Court has defined "de novo judicial review" using the same language that appears in Tennessee Code Annotated § 67-5-1511(b). *See Frye v. Memphis State Univ.*, 671 S.W.2d 467, 469 (Tenn. 1984). In other words, "[a] statute requiring de novo judicial review means 'a new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue.'" *Tenn. Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d 517, 520 (Tenn. 2005) (quoting *Frye*, 671 S.W.2d at 469).

6

Under the version of the statute in effect when Williamson County sought judicial review of the decision of the State Board, this Court has held in at least one reported decision that the standard of review is de novo.[7] *Maury Cnty. ex rel. Maury Reg'l Hosp. v. Tenn. State Bd. of Equalization*, 117 S.W.3d 779, 782 (Tenn. Ct. App. 2003). But, in other reported decisions, this Court has held that judicial review falls under the deferential standard found in the UAPA. *Coal Creek Co. v. Anderson Cnty.*, 546 S.W.3d 87, 97 (Tenn. Ct. App. 2017); *Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999). Because later decisions did not expressly reverse earlier decisions, it is difficult to discern which reported decision should be deemed controlling. *See* TENN. SUP. CT. R. 4(G)(2) (providing that "[o]pinion[s] reported in the official reporter . . . shall be considered controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction"). Most of this Court's unreported decisions have held that the UAPA governs judicial review of decisions of the State Board. *See, e.g., Am. Bus. Supply, Inc. v. Tenn. State Bd. of Equalization*, No. M2022-01411-COA-R3-CV, 2023 WL 7101290, at *5 (Tenn. Ct. App. Oct. 27, 2023); *In re TWT Acquisition, LLC*, No. M2020-01100-COA-R3-CV, 2022 WL 554312, at *1 (Tenn. Ct. App. Feb. 24, 2022); *Cress v. Tenn. State Bd. of Equalization*, No. E2021-00093-COA-R3-CV, 2021 WL 5148088, at *4 (Tenn. Ct. App. Nov. 5, 2021); *Vanderbilt Univ. v. Tenn. State Bd. of Equalization*, No. M2014-01386-COA-R3-CV, 2015 WL 1870194, at *5 (Tenn. Ct. App. Apr. 22, 2015); *Spring Hill, L.P. v. Tenn. State Bd. of Equalization*, No. M2001-02683-COA-R3-CV, 2003 WL 23099679, at *4 (Tenn. Ct. App. Dec. 31, 2003). But the trial court relied on a recent, unreported case of this Court that described the review of final decisions as de novo. *See Anderson Cnty. Tenn.*, 2020 WL 762511, at *7.

Given this Court's conflicting precedent, we rely on the Tennessee Supreme Court's definition of de novo judicial review. It means, as Tennessee Code Annotated § 67-5-1511(b) provides, "a new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue." *See Frye*, 671 S.W.2d at 469. It does not "mean a complete repetition of all of the evidence." *Id.* at 469 n.2. But the parties may avail themselves of the opportunity to submit additional or supplemental evidence.

We use the scope of review from Tennessee Rule of Appellate Procedure 13(d). *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). The trial court's findings of fact derived from the additional or supplemental evidence are reviewed de novo upon the record, accompanied by a presumption of correctness, unless the preponderance of the

---

[7] For appeals filed on or after July 1, 2023, the Legislature has resolved the question of the proper standard of review by amending Tennessee Code Annotated § 67-5-1511(b) to clarify that the review "is a de novo appeal, with no presumption of correctness of the decisions of the lower tribunals of the case at hand." *See* S.B. 148, 113th Gen. Assemb., Reg. Sess. (Tenn. 2023). An earlier version of the judicial review statute also used the words "de novo appeal." *Cress v. Tenn. State Bd. of Equalization*, No. E2021-00093-COA-R3-CV, 2021 WL 5148088, at *4 n.3 (Tenn. Ct. App. Nov. 5, 2021).

evidence is otherwise. TENN. R. APP. P. 13(d). We review the trial court's conclusions of law de novo with no presumption of correctness. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

B.

Turning to the issues raised on appeal, Williamson County first faults the trial court for allegedly failing to consider the property's intrinsic value. It argues that part of that intrinsic value is the AT&T lease. Property value must "be ascertained from the evidence of its sound, intrinsic and immediate value, for purposes of sale between a willing seller and a willing buyer without consideration of speculative values." Tenn. Code Ann. § 67-5-601(a) (Supp. 2017). Williamson County reasons that it would be "highly unlikely that a 'willing seller' would sell the subject property on January 1, 2015, for the proposed value of $45,700,000 . . . when the property would generate over $76,000,000 in rent over the remaining term of the lease."

In valuing property, assessors must "be guided by, and following the instructions of, the appropriate assessment manuals issued by the division of property assessments and approved by the [State Board]." *Id.* § 67-5-602(b) (2018). Those manuals consider several factors, including "current use" and "whether the property is income-bearing or non-income bearing." *Id.* § 67-5-602(b). But those manuals also consider "other factors and evidence of value generally recognized by appraisers as bearing on the sound, intrinsic and immediate economic value at the time of assessment." *Id.* Here, the court determined, based upon the report of AT&T's appraiser, Mr. Perutelli, that "[i]t is widely accepted and recognized in the appraisal field that, when valuing the fee simple interest in a property, all rentable space must be estimated at market rent levels, and any rent attributed to specific leases must be disregarded." And it found the 2013 sale-leaseback transaction "was a financing transaction and not an arm's length sale." So the sales price and rent were not reflective of the market. Use of the 2013 transaction would inflate the market value of the property and not be credible.

We discern no error in the court's acceptance of Mr. Perutelli's opinion that the 2013 sale-leaseback transaction should not be taken into account in valuing the property. *See Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 275 (Tenn. 2005) (recognizing "[t]he weight of the theories and the resolution of legitimate but competing expert opinions are matters entrusted to the trier of fact"). Mr. Perutelli demonstrated sufficient experience and familiarity with real estate appraisals. And professional literature supported his opinion that the terms of a sale-transaction should not be used to value property unless those terms can be confirmed to be at market. The evidence also supports the findings that the sales price and rent from the 2013 sale-leaseback transaction were above market. The proof showed that the terms of the transaction were negotiated like a loan, with the purchase price dependent on the rent AT&T was willing to pay.

8

Williamson County next faults the trial court's determination of the highest and best use of the property. It claims that the court found that the highest and best use of the property was for the improvements on the property to be demolished and the land redeveloped. But we agree with AT&T that the court made no such determination. Rather, the court recognized that "Mr. Perutelli ultimately concluded that the [p]roperty's highest and best use was 'redevelopment,' which requires demolition of the building." This conclusion informed the appraiser's opinion of the property's value, including which valuation approaches were appropriate. Although it might be surmised that the court agreed with this aspect of Mr. Perutelli's opinion, the court made no finding concerning the property's highest and best use.

C.

For taxation purposes, property classified as real property is subclassified according to its use. The use subclassification, in turn, determines the applicable assessment ratio (and tax burden for the taxpayer):

> (1) PUBLIC UTILITY PROPERTY. Public utility property shall be assessed at fifty-five percent (55%) of its value;
>
> (2) INDUSTRIAL AND COMMERCIAL PROPERTY. Industrial and commercial property shall be assessed at forty percent (40%) of its value;
>
> (3) RESIDENTIAL PROPERTY. Residential property shall be assessed at twenty-five percent (25%) of its value; and
>
> (4) FARM PROPERTY. Farm property shall be assessed at twenty-five percent (25%) of its value.

Tenn. Code Ann. § 67-5-801(a) (Supp. 2017). When real property is used for more than one purpose, the property is apportioned among the different subclasses according to State Board guidelines. *Id.* § 67-5-801(b)(1). As its final issue, Williamson County contends that the property should be subclassified as public utility property and not as industrial and commercial property.

We conclude that the issue was waived. The trial court denied Williamson County's request to reclassify the property on two alternative and independent grounds. The court concluded that Williamson County "ha[d] failed to timely preserve the issue and waived its right to pursue classification," and the court determined that Williamson County had failed to prove that the property should be classified as public utility property. In its brief, Williamson County only addressed the latter ground. It addressed the former ground in its reply brief.

"Generally, where a trial court provides more than one basis for its ruling, the appellant must appeal all the alternative grounds for the ruling." *Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *7 (Tenn. Ct. App. Aug. 6, 2018). When an appellant fails to do so, the lower court must be affirmed. *Id.* at *8. Although the timeliness issue is addressed in the reply brief, reply briefs are not "vehicle[s] to correct deficiencies in initial briefs." *Augustin v. Bradley Cnty. Sheriff's Office*, 598 S.W.3d 220, 227 (Tenn. Ct. App. 2019).

## III.

The evidence did not preponderate against the trial court's valuation of the property. And the issue of the correct subclassification of the property was waived. So we affirm.

_____s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE