## IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE

_____

| | | |
|---|---|---|
| **BATSON EAST-LAND CO., INC.**, | ) | Montgomery County Chancery Court |
| | ) | No. 94-74-434 |
| Plaintiff/Appellee, | ) | |
| | ) | |
| VS. | ) | C.A. No. 01A01-9708-CH-00387 |
| | ) | |
| **RONNIE D. BOYD, as Assessor of Property of Montgomery County, Tennessee**, | ) ) ) | |
| | ) | |
| Defendant/Appellant, | ) | |
| | ) | |
| **ASSESSMENT APPEALS COMMISSION OF THE STATE OF TENNESSEE and TENNESSEE BOARD OF EQUALIZATION,** | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

**May 6, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

_____

From the Chancery Court of Montgomery County at Clarksville.
**Honorable Alex W. Darnell, Chancellor**

**Robert Clive Marks**, MARKS, SHELL, MANESS & MARKS, Clarksville, Tennessee
Attorney for Defendant/Appellant.


**David E. Cypress**, Nashville, Tennessee.
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Ronnie D. Boyd, the Assessor of Property of Montgomery County, Tennessee, appeals the trial court's judgment which ruled that eighty-nine percent (89%) of a parcel of real property owned by Petitioner/Appellee Batson East-Land Company, Inc., was entitled to "Greenbelt" status for the tax year 1991. We conclude that the evidence does not preponderate against the trial court's ruling and, thus, we affirm the trial court's judgment.

This dispute began when the Assessor for Montgomery County assessed Batson's property as commercial rather than agricultural land based on the Assessor's determination that the property was not entitled to "Greenbelt" status for the 1991 tax year. Batson acquired the subject property in 1985 when it purchased a farm consisting of approximately 300 acres. In 1986, Batson, or its agent, successfully applied for a change in zoning for a portion of the property which fronted Highway 79. After the zoning change, the majority (244 acres) of the farm, known as Parcel 13, continued to be zoned as agricultural property, while the affected portion of the farm, which became known as Parcel 13.02, was rezoned as commercial property. In connection with its rezoning application, Batson sold thirty-two acres of Parcel 13.02 to a third party for development of a Wal-Mart shopping center. This appeal involves the remaining twenty-three or twenty-four acres of Parcel 13.02, which property lies along either side of the Wal-Mart development and is still owned by Batson.

After the county board of equalization upheld the Assessor's determination that the property was not entitled to Greenbelt status, Batson appealed the county board's assessment to the State Board of Equalization. *See* T.C.A. § 67-5-1412(a) (Supp. 1991) (granting aggrieved taxpayer right to appeal from any action of county board of equalization to State Board of Equalization). The administrative law judge hearing the appeal found in favor of Batson and ruled that the subject property should be classified as agricultural land for the 1991 tax year. Accordingly, the administrative law judge entered an initial decision ordering that the property be assessed as agricultural land for 1991.

In August 1992, attorney Robert Clive Marks, purporting to represent both the Assessor and Montgomery County, appealed the administrative law judge's decision to the Assessment Appeals Commission. *See* T.C.A. § 67-5-1501(c) (Supp. 1991). The notice of appeal

specifically stated that both the Assessor and the County were appealing the initial decision. After conducting an evidentiary hearing, the Assessment Appeals Commission reversed the initial decision and order of the administrative law judge and denied Batson's application for Greenbelt status for the 1991 tax year. In support of its decision, the Commission found that the subject property "was not being used on the assessment date at issue and its immediate most suitable economic use was for commercial development." The Commission's decision became final after the State Board of Equalization opted not to hear the appeal, and an official certificate to that effect was entered on January 3, 1994. *See* T.C.A. § 67-5-1502(j)(1) (1989) (providing that action taken by Assessment Appeals Commission shall be final unless State Board of Equalization requires review of action within forty-five days).

On February 8, 1994, within sixty days after the State Board of Equalization's decision became final, Batson filed a petition for review in the chancery court of Montgomery County. *See* T.C.A. § 67-5-1511(b) (1989) (providing that judicial review of Board's action shall be in chancery court of Davidson County or county where disputed assessment was made). In the petition's caption, Batson named as respondents the Assessor, the Assessment Appeals Commission, and the State Board of Equalization. The petition did not specifically name Montgomery County as a party; however, the petition was served on Robert Clive Marks, the attorney of record for the County.

The Assessor responded by filing a motion to dismiss for failure to join an indispensable party. The Assessor's motion argued, *inter alia*, that Montgomery County, as the taxing jurisdiction affected by Batson's petition for review, was an indispensable party to the action and that Batson's failure to join the County required dismissal of the petition. The State Attorney General, on behalf of the Assessment Appeals Commission and the State Board of Equalization, subsequently joined in the Assessor's motion to dismiss.

The trial court denied the Respondents' motions to dismiss and proceeded to conduct an evidentiary hearing on the merits of Batson's petition for review. *See* T.C.A. § 67-5-1511(b)

(1989) (providing that judicial review shall be *de novo* appeal to chancery court).[1] After conducting

the hearing, the trial court entered a final decree ruling that eighty-nine percent (89%) of the subject

property was entitled to Greenbelt status for the 1991 tax year.

On appeal from the trial court's final decree, the Assessor raises the following issues

for this court's review:

> 1. Whether the trial court erred in not dismissing the petition for review for lack of subject matter jurisdiction because Montgomery County was not joined as an indispensable party.
>
> 2. Whether the trial court erred in [qualifying] 89% of the property for Greenbelt status.

We first reject the Assessor's argument that the trial court erred in not dismissing

Batson's petition for review for lack of subject matter jurisdiction because Montgomery County was

not joined as an indispensable party. Batson filed its petition for review pursuant to the Uniform

Administrative Procedures Act (APA), which, as pertinent, contains the following provisions:

> (1) Proceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute. Such petition shall be filed within sixty (60) days after the entry of the agency's final order thereon. . . .
>
> (2) . . . Copies of the petition shall be served upon the agency and all parties of record, including the attorney general and reporter, in accordance with the provisions of the Tennessee Rules of Civil Procedure pertaining to service of process.

T.C.A. § 4-5-322(b) (1991).

In construing the foregoing statutory provisions, this court recently held that a party

obtaining judicial review of a decision of the State Board of Equalization is not required to name the

---

[1]In accordance with this court's opinion in *Richardson v. Assessment Appeals Commission*, 828 S.W.2d 403, 405 (Tenn. App. 1991), section 67-5-1511(b) now specifies that the judicial review "shall consist of a new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue." T.C.A. § 67-5-1511(b) (1994).

applicable county in the petition for review. In ***Schering-Plough Healthcare Products, Inc. v. State Board of Equalization***, No. 02A01-9703-CH-00058, 1998 WL 23127 (Tenn. App. Jan. 23, 1998), ***perm. app. filed*** (Tenn. Mar. 25, 1998), we explained that section 4-5-322(b) of the APA imposes only two requirements upon the petitioner. First, the petitioner must file the petition for review within sixty days after the entry of the Board's final order. Second, the petitioner must serve copies of the petition upon the Board and upon all parties of record in accordance with the provisions of the Tennessee Rules of Civil Procedure pertaining to service of process. After enumerating these requirements, we observed that "nowhere in the ordinary language of [section] 4-5-322(b) is it required that all parties of record be ***named*** in the petition for review." ***Schering-Plough***, 1998 WL 23127, at *4 (emphasis added).

In support of this construction, we noted that the petition for review merely was a continuation of the administrative proceedings in which the parties already had been determined and were of record. ***Schering-Plough***, 1998 WL 23127, at *4. Thus, we reasoned that "parties to the administrative proceedings remain parties to the judicial review of those proceedings if the requirements of [section] 4-5-322(b) are met." ***Id***. We also compared the petition for review to a complaint in an original action, as well as to a notice of appeal, wherein the failure to correctly identify a party in the caption would not constitute a fatal defect. ***Id***., at **4-5 (citing ***Goss v. Hutchins***, 751 S.W.2d 821, 824 (Tenn. 1988); T.R.C.P. 10.01; T.R.A.P. 3(f)).

In the present case, Batson met the requirements of section 4-5-322(b) when it (1) filed its petition for review in the chancery court of Montgomery County within sixty days after entry of the Board's final order, and (2) served copies of the petition upon the attorney of record for the Assessor and the County. Inasmuch as Batson met both requirements of section 4-5-322(b), the County remained a party to the judicial review proceedings in chancery court, and Batson's failure to separately name the County as a party in the petition for review was not fatal to the petition.

We now turn to the merits of the Assessor's appeal, wherein he contends that the trial court erred in ruling that eighty-nine (89%) of the subject property was entitled to Greenbelt status for the 1991 tax year. In reviewing the action of the State Board of Equalization, the trial court properly conducted a new hearing during which it permitted the parties to introduce additional or

supplemental evidence relevant to the issue of the property's entitlement to Greenbelt status. *See* T.C.A. § 67-5-1511(b) (1989 & 1994).[2] Our review of the trial court's decision, therefore, is governed by the provisions of rule 13(d) of the Tennessee Rules of Appellate Procedure. *Richardson v. Assessment Appeals Comm'n*, 828 S.W.2d 403, 407 (Tenn. App. 1991). In accordance with rule 13(d), we review the trial court's findings of fact *de novo* upon the record, accompanied by a presumption of correctness of such findings, unless the evidence preponderates otherwise. *See* T.R.A.P. 13(d).

In *Marion County v. State Board of Equalization*, 710 S.W.2d 521 (Tenn. App. 1986), this court discussed the Legislature's purpose in passing the "Agricultural, Forest, and Open Space Land Act of 1976:"

> In 1976, the Legislature, concerned about the threat to open land posed by urbanization and high land taxes, passed an act to encourage landowners to keep their property open. T.C.A. § 67-5-1002. If their open land had taken on an inflated value because of its location and its potential use for residential or commercial development, the act, known generally as the "Greenbelt Law," allowed the owner to apply to the tax assessor of the county for a classification of the property as agricultural, forest, or open space land. T.C.A. § 67-5-1007. When the property has been so classified, the value for assessment purposes is to be calculated as if that were its highest and best use. T.C.A. § 67-5-1008. Thus, the value of the land used for assessment purposes is not what a willing buyer in an arm's length transaction would pay for the property if it were not restricted in use . . . but is to be based on farm income, soil productivity or fertility, topography, etc. T.C.A. § 67-5-1008(a)(2). If the use changes, the owner is required to pay the taxes that would have been paid on the full unrestricted value of the land, going back three years on agricultural and forest land and five years on open space land.

*Marion County*, 710 S.W.2d at 522.

Under the "Greenbelt Law" as it existed in 1991, property was entitled to Greenbelt status if it met the Law's definition of agricultural land. To that end, the Legislature provided the following definition for the term "agricultural land:"

---

[2]*See supra* note 1.

> "Agricultural land" means a tract of land of at least fifteen (15) acres including woodlands and wastelands which form a contiguous part thereof, constituting a farm unit engaged in or held for the production or growing of crops, plants, animals, nursery, or floral products. "Agricultural land" also means two (2) or more tracts of land including woodlands and wastelands, one (1) of which is greater than fifteen (15) acres and none of which is not less than ten (10) acres, and such tracts may not be contiguous but shall constitute a farm unit being held and used for the production or growing of agricultural products.

T.C.A. § 67-5-1004(1) (1989). The Legislature also provided the following guidance to tax assessors to determine whether land was agricultural:

> In determining whether any land is agricultural land, the tax assessor shall take into account, among other things, the acreage of such land, the productivity of such land, and the portion thereof in actual use for farming or held for farming or agricultural operation.

T.C.A. § 67-5-1005(a)(3) (1989).

The foregoing statutes established that, in order to be classified as agricultural land under the Greenbelt Law in effect in 1991, property need not have been "in actual use for farming" or "engaged in . . . the production or growing of crops, plants, animals, nursery, or floral products." T.C.A. §§ 67-5-1005(a)(3), 67-5-1004(1) (1989). Instead, it was sufficient if the property was "***held*** for farming or agricultural operation" or if the property was "***held*** for the production or growing of crops, plants, animals, nursery, or floral products." ***Id.*** (emphases added). Accordingly, this appeal requires us to review the record to determine if the evidence preponderates against the finding that the subject property was being held for farming or agricultural operation, ***i.e.*** the production or growing of crops, plants, animals, nursery, or floral products.

After carefully reviewing the record, we affirm the trial court's ruling that the subject property was entitled to Greenbelt status for the 1991 tax year. At the hearing below, the Assessor acknowledged that there were no roads, fence lines, or other boundaries separating Parcel 13.02 from Parcel 13. (Tr. 2/20/96, pp. 28-29). Nevertheless, the Assessor testified that he refused to assess the subject property as agricultural land based primarily on two factors: (1) Prior to the assessment date of January 1, 1991, Batson had not actually planted crops or cultivated the land; and (2) after

acquiring the property in 1985, Batson successfully applied to rezone the property as commercial property. The Assessor also noted that Batson had advertised the subject property for sale prior to January 1991.

Batson's vice president, Robert R. Batson, Sr., acknowledged that Batson did not actually cultivate the property prior to January 1991. Robert Batson maintained, however, that he intended to cultivate the property in 1991 and in the years prior to 1991. Prior to 1991, Batson had participated in various ASCS[3] programs, such as price support and production adjustment programs and an optional diversion program for wheat and feed grains. In addition, Robert Batson had asked George Kennedy, III, to farm the property in 1991, and Batson had purchased crop insurance for that purpose. George Kennedy, III, corroborated this testimony, stating that, beginning in 1987 and ending in 1991, Robert Batson asked him to farm the subject property. Kennedy already was working another farm owned by Batson, and he told Robert Batson that he "would get to it if [he] could." Kennedy did not actually farm the property, however, and beginning in 1992, Batson leased the land to another farmer, Richard Conroy.

Based on the foregoing evidence, we conclude that the record supports the trial court's ruling that most of the subject property was entitled to Greenbelt status for the 1991 tax year. Although it was undisputed that Batson did not actually farm or cultivate the property prior to 1992, Batson produced evidence from which the trial court could have found that, at the time of its assessment, the subject property was being "held for the production or growing of crops" as required by the Greenbelt Law. T.C.A. § 67-5-1004(1) (1989).

Accordingly, the trial court's judgment is affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Assessor, for which execution may issue if necessary.

_____
FARMER, J.

_____

[3]The Agricultural Stabilization and Conservation Service of the United States Department of Agriculture.

_____
HIGHERS, J. (Concurs)


_____
LILLARD, J. (Concurs)