IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 2, 2005 Session

**THE METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY, IN ITS OWN BEHALF AND FOR THE USE AND
BENEFIT OF THE STATE OF TENNESSEE v. DELINQUENT
TAXPAYERS AS SHOWN ON THE 1999 REAL PROPERTY TAX
RECORDS ON THE METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY AND MORE SPECIFICALLY DESCRIBED IN
CAIN, JOHN E., III, TRUSTEE**

**Direct Appeal from the Chancery Court for Davidson County
No. 01-747-II     Carol L. McCoy, Chancellor**

_____

**No. M2004-00040-COA-R3-CV - Filed March 31, 2005**

_____

This appeal arises from an action brought by the metropolitan government to collect delinquent property taxes. The taxpayer owned 37.25 acres of property that were zoned commercial but were granted "greenbelt" status. In 1999, the taxpayer leased 1.21 acres of his property to a retail pharmacy, but he did not inform the assessor's office of the change in use of the 1.21 acre portion of his land. In 2000, after the assessor's office learned of the change in use through a review of a building permit summary, the assessor changed the classification on the entire 37.25 acre parcel from "greenbelt" to commercial. As a result, a "rollback" was issued causing taxes to be due on the entire 37.25 acre parcel at a commercial rate for the three previous years. The assessor mailed the taxpayer a 1999 tax bill showing the amount owed due to the rollback. Although the assessor informed the taxpayer that the matter could no longer be corrected through the assessor's office, the taxpayer did not file an administrative appeal or bring a lawsuit to dispute the error in classification and assessment. Following a hearing on the delinquent tax lawsuit, the trial court found that the assessor's office erred in removing the taxpayer's entire parcel from "greenbelt" classification and subjecting the entire parcel to a tax "rollback." The court found that only the 1.21 acre portion of the parcel used for construction of the pharmacy should have lost "greenbelt" status. Additionally, the court found that, because the parties stipulated that no change in use of the property had occurred since the underlying action was initiated, its findings were dispositive not only for tax years 1999 and 2000, but also through the date of the final order, November 26, 2003. The metropolitan government appealed arguing that the taxpayer was barred by statute from contesting the validity of the assessment once the delinquent tax lawsuit was filed. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and
Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

J. Brooks Fox, John L. Kennedy, Lora Barkenbus Fox, and Philip Daniel Balz, for the appellant, The Metropolitan Government of Nashville and Davidson County.

Thomas V. White, Nashville, Tennessee, for the appellee, John E. Cain, III.

**OPINION**

*Factual Background and Procedural History*

John E. Cain, III ("Mr. Cain") is the owner of a parcel of land, consisting of 37.25 acres, located at 2788 Murfreesboro Pike in Antioch, Tennessee. In 1997, Mr. Cain's property consisted of 55.06 acres, all of which remained vacant and undeveloped. At that time, the property was "split-zoned," with some acreage being zoned for commercial use and the remaining portion being zoned residential. Additionally, Mr. Cain applied for and was granted "greenbelt"[1] classification for the property. In 1998, he subdivided the property and sold 17.81 acres, leaving him 37.25 acres that retained greenbelt status.

In March of 1999, Mr. Cain entered into a long-term commercial lease agreement with Hook-SupeRx, Inc., a retail pharmacy chain. Pursuant to their agreement, Mr. Cain began commercial development of a 1.21 acre portion of the 37.25 acre tract for use as a CVS pharmacy. On June 29, 1999, a notice of the lease agreement was recorded in the county registrar's office. The recorded notice of lease included a statement that the leased premises consisted of approximately 10,125 square feet, a copy of the lease agreement, and a site layout plan that provided a metes and bounds description of the 1.21 acres. On December 23, 1999, Mr. Cain reserved a book and page number in the registrar's office for the anticipated recording of a plat showing the separation of the 37.25 acre tract into three separate tracts, consisting of a 1.21 acre tract, a 15.19 acre tract, and a 20.85 acre tract. On February 9, 2000, the Metro Planning Commission approved Mr. Cain's proposed plat and the separation of the 37.25 acre property into three separate tracts.

During the course of the development of the CVS Pharmacy site and the simultaneous interaction with other branches of the county government, Mr. Cain never informed the office of the Assessor of Property (the "Assessor") about the proposed development. He did not inform the Assessor about the commercial development of the 1.21 acres, the recording of the notice of lease,

---

[1]Pursuant to the Agricultural, Forest and Open Space Land Act of 1976, open land that exists near growing commercial and residential areas may be "threatened" by "urban sprawl" and the system of property taxation. *See* Tenn. Code Ann. § 67-5-1002(1) (2003). As a result, this type of open space real property, that might otherwise be classified as residential, commercial, or other higher density use and thereby be subject to higher property taxes, may be eligible for classification as "agricultural land," "forest land," or "open space land," resulting in a lesser tax burden. *See id*. § 67-5-1004 (2003). This act, although given a different title by the legislature, has come to be known generally as the "Greenbelt law." *See Marion County v. State Bd. of Equalization*, 70 S.W.2d 521, 522 (Tenn. Ct. App. 1986).

the reservation of the book and page number, or the approval by the Metro Planning Commission of the plat separation.

In 2000, the Assessor became aware of the CVS Pharmacy development through an electronic summary of the building permit issued for the pharmacy, which was received through the county's computerized permit tracking system. The summary stated that the building permit was issued July 1, 1999, and the purpose for the permit was to "Construct 75' x 135', 10,125 Sq. Ft. Non Residence Building For 'CVS/Pharmacy' With 14.5' x 16' Drive Thru Canopy." According to the testimony of Jim Clary, who worked in the Assessor's office and reviewed the building permit summary, at the time the summary was brought to the attention of the Assessor, the parcel had not yet been separated into three separate tracts, but consisted of the entire 37.25 acres. However, Mr. Clary also testified that anyone in the Assessor's office could have followed up on the parcel and its status through the computerized permit tracking system, which would have indicated that only a 1.21 acre portion of the property was being used for a commercial purpose. Based solely upon the summary of the building permit, the Assessor changed the classification of the entire 37.25 acres of Mr. Cain's property from greenbelt classification to commercial use. Consequently, the change in classification resulted in a "rollback,"[2] causing taxes at the commercial rate to be due for the three previous years, 1999, 1998, and 1997.

On May 18, 2000, the Assessor mailed a "Notice of Appraised Value Classification and Assessment" showing the new classification for the entire 37.25 acres, along with a statement of the much higher, newly assessed value. Included in the appraisal notice was a statement that the document was an appraisal and "not a tax bill." In addition, the notice included an explanation regarding the taxpayer's right to appeal the appraisal, classification, and assessment with the Metropolitan Board of Equalization, along with an announcement that the board of equalization would hear appeals during the first week of June 2000. Mr. Cain was also later mailed a "1999 Real Property Tax Statement" showing the adjusted tax amount owed due to the rollback. The tax bill did not indicate the date on which it was sent, but it did show that the rollback adjustment was made on July 3, 2000 and that any penalty or interest charges would not be applied if the full amount was paid within thirty (30) days of the adjustment, i.e., August 3, 2000. During his testimony, however, Mr. Cain stated that the notice of appraisal and the tax bill were mailed to his title insurance company, and he did not receive these documents until some point after the date they were originally mailed.

Once Mr. Cain became aware of the reassessment and rollback adjustment, he enlisted the aid of Terry Hunter, a former member of the county board of equalization, to assist in handling this issue with the Assessor's office. Mr. Hunter spoke with Ed Fox, the head of the commercial department of the Assessor's office, who, according to Mr. Hunter's testimony, informed Mr. Hunter

---

[2]Essentially, "rollback taxes" will be assessed if a parcel of land that has been given greenbelt classification ceases to qualify for greenbelt status. In that situation, the owner of the property is required to pay the "saved" taxes on the property for each of the preceding three (3) years for agricultural and forest land, and for the preceding five (5) years for open space land. *See* Tenn. Code Ann. § 67-5-1008(d)(1) (2003).

that, from the Assessor's perspective, the 1.21 acre tract had never been officially removed from the larger parcel. Thus, as Mr. Fox put it, the removal of greenbelt classification from the entire parcel had become a "legal issue," and the Assessor's office could no longer change the classification.

Despite the foregoing, Mr. Cain neither appealed the rollback adjustment with the Davidson County Board of Equalization or the State of Tennessee Board of Equalization, nor did he file a lawsuit to challenge the action of the Assessor's office. Rather, his first attempt to dispute the reclassification and rollback assessment occurred in the form of his answer to the present delinquent tax action.

On March 9, 2001, the Metropolitan Government of Nashville and Davidson County ("Metro") filed a complaint in this matter in Davidson County Chancery Court, originally for the purpose of collecting delinquent taxes owed for the year 1999. A default judgment, which was entered against Mr. Cain due to his failure to respond, was set aside, and Mr. Cain filed his answer on August 30, 2001. In his answer, Mr. Cain asserted that Metro's declassification of all of his property was contrary to section 67-5-1008(d)[3] of the Tennessee Code.

_____

[3]Section 67-5-1008(d) provides, in pertinent part, as follows:

> (d)(1) The appropriate assessor shall compute the amount of taxes saved by the difference in present use value assessment and value assessment under part 6 of this chapter, for each of the preceding three (3) years for agricultural and forest land, and for the preceding five (5) years for open space land, and the assessor shall notify the trustee that such amount is payable, if:
> (A) Such land ceases to qualify as agricultural land, forest land, or open space land as defined in § 67-5-1004;
> . . . .
> (3) The amount of tax savings calculated under this subdivision (d) shall be the rollback taxes due as the result of disqualification or withdrawal of the land from classification under this part. Rollback taxes shall be payable from the date written notice is provided by the assessor, but shall not be delinquent until March 1 of the following year. When the assessor determines there is liability for rollback taxes, the assessor shall give written notice to the tax collecting official identifying the basis of the rollback taxes and the person the assessor finds to be responsible for payment, and the assessor shall provide a copy of the notice to the responsible person. Rollback taxes shall be a first lien on the disqualified property in the same manner as other property taxes, and shall also be a personal responsibility of the current owner or seller of the land as provided in this part. The assessor may void the rollback assessment if it is determined that the assessment was imposed in error, except there shall be no refund of rollback taxes that have been collected at the request of a buyer or seller at the time of sale. Liability for rollback taxes, but not property values, may be appealed to the state board of equalization by March 1 of the year following the notice by the assessor. However, property values fixing the amount of rollback taxes may only be appealed as otherwise provided by law.
> (4)(A) If, under the provisions of subdivision (d)(1), only a portion of a parcel is subject to rollback taxes, the tax assessor shall apportion the assessment of such parcel on the first tax roll prepared after such taxes become payable, and enter the apportioned amount attributable to such portion as a separately assessed parcel on the tax roll.
> (B) Such apportionment shall be made for each of the years to which the rollback taxes apply.

Tenn. Code Ann. § 67-5-1008(d) (2003).

Prior to trial, the parties submitted a joint stipulation. Originally, Metro brought two separate actions against Mr. Cain, one each for the tax years 1999 and 2000. By stipulation, however, the parties agreed that the trial court's findings regarding the 1999 tax delinquency lawsuit would be dispositive of the case brought for the year 2000. In the stipulation, the parties acknowledged that, from the time Mr. Cain obtained greenbelt status for the entire 37.25 acres of property, there had been no changes in the use of the property, except for the 1.21 acre portion leased to CVS pharmacy for commercial use. The parties further stipulated that, should the trial court find that the entire 37.25 acre tract lost greenbelt status, then the total adjusted 1999 real property tax amount owed would be $61,221.70. For the tax year 2000, the parties agreed that Mr. Cain would owe $48,256.29 should the court find that greenbelt status was properly removed from the entire parcel. The stipulation further provided that, if the trial court found that only the 1.21 acre portion lost greenbelt status, Mr. Cain would owe taxes for the remaining 36.04 acres of his property in the amount of $113.13 for both tax years 1999 and 2000. None of these amounts include penalties, interest or attorney fees, which the parties agreed would be assessed against Mr. Cain. Approximately two weeks prior to trial, Mr. Cain paid $10,000 into the court under protest.

After conducting a hearing on the merits, the trial court entered a final order ruling that there were no material facts in dispute, and that, as a matter of law, the Assessor erred in withdrawing Mr. Cain's entire parcel from greenbelt classification and subjecting it to rollback taxes. The trial court found that only the 1.21 acre portion leased to CVS should have lost greenbelt status and been subject to rollback taxes. In addition, the trial court ruled that its findings of fact and conclusions of law were dispositive for the year 1999 through the date of the final order, November 26, 2003, because there had been no changes in the use to the 36.04 acre portion of Mr. Cain's property, which retained its greenbelt classification.

On appeal from the trial court's final order, Metro presents, as we perceive them, the following issues for our review:

(1)     Whether the trial court erred by allowing Mr. Cain to challenge the classification and resulting assessment of his property after the delinquent taxpayer lawsuit was filed by Metro, and

(2)     Whether the trial court erred by holding that its findings of fact and conclusions of law in this case were dispositive of Mr. Cain's property tax classification for the years 2001, 2002, and 2003, when those matters were not before the court.

### *Standard of Review*

In non-jury cases such as the one before us, the trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of the correctness of those findings unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d) (2004); *Hawks v. City of Westmoreland*,

960 S.W.2d 10, 15 (Tenn. 1997). We review questions of law, however, *de novo* without any presumption of correctness. *Hawks*, 960 S.W.2d at 15.

### Taxpayer's Challenge of Assessment for Tax Years 1999 and 2000

Turning to its first issue, Metro relies on various statutes for the proposition that, by the time Metro brought the delinquent tax lawsuit, Mr. Cain was barred from challenging the reclassification and resulting assessment. Although the record supports the trial court's finding that the Assessor erroneously withdrew Mr. Cain's entire parcel from greenbelt status, we conclude that the assessment, although erroneous, was conclusive because Mr. Cain failed to pursue in a timely fashion any of the means of appeal available to him.

Under the property tax laws of this state, taxpayers are provided several avenues for challenging the assessment and levy of property taxes. An objecting taxpayer may challenge an assessment administratively through an appeal to the county or state board of equalization. Tenn. Code Ann. § 67-5-1407 (2003) (county board of equalization); *Id*. § 67-5-1501 (2003) (state board of equalization). Under certain circumstances, a taxpayer may make payment of his or her taxes under formal protest and seek judicial review. *See* Tenn. Code Ann. § 67-1-901 (2003); *Fentress County Bank v. Holt*, 535 S.W.2d 854, 857 (Tenn. 1976); *Lebanon Liquors, Inc. v. City of Lebanon*, 885 S.W.2d 63, 66 (Tenn. Ct. App. 1994). In addition, when a taxpayer believes that the tax assessor has committed an obvious clerical error resulting in an erroneous assessment, he or she may proceed pursuant to section 67-5-509 of the Tennessee Code. *See* Tenn. Code Ann. § 67-5-509 (2003); *State ex rel. Manville Bldg. Materials Corp. v. Foster*, CA No. 81, 1991 WL 34554, at *2–3 (Tenn. Ct. App. Mar. 18, 1991) *perm. app. denied* (Tenn. Aug. 5, 1991). From our review of these revenue statutes and the applicable case law, the procedures set forth above constitute the exclusive means by which a taxpayer may challenge an erroneous property tax assessment. Applying the aforementioned law to the facts of this case, we will address each of these means of appeal below.

In the event an aggrieved taxpayer seeks administrative review of an erroneous classification or assessment, the taxpayer may proceed by means of an appeal to the county board of equalization. Tenn. Code Ann. § 67-5-1407(a)(1)(A) (2003) ("Any owner of property or taxpayer . . . has the right . . . to make complaint before the county board of equalization . . . [if the] [p]roperty under appeal or protest by the taxpayer has been erroneously classified or subclassified for purposes of taxation."). Additionally, the taxpayer may seek review directly with the state board of equalization. *Id*. § 67-5-1501(a) (2003) ("[S]tate board of equalization has jurisdiction over the valuation, classification, and assessment of all properties in the state."); *see also Crown Enters., Inc. v. State Bd. of Equalization*, 543 S.W.2d 583 (Tenn. 1976). However, section 67-5-1401 of the Tennessee Code provides that, "[i]f the taxpayer fails, neglects or refuses to appear before the county board of equalization prior to its final adjournment, the assessment as determined by the assessor shall be conclusive against the taxpayer, and such taxpayer shall be required to pay the taxes on such amount. . . ." Tenn. Code Ann. § 67-5-1401 (2003). It is clear from the record that Mr. Cain never appeared before either the county or state board of equalization. Therefore, under section 67-5-1401, the assessment would be deemed conclusive against Mr. Cain. *Id*.

However, besides pursuing an administrative appeal, the taxpayer may seek to have certain errors corrected directly through the Assessor's office, pursuant to section 67-5-509 of the Tennessee Code. *Id*. § 67-5-509. Section 67-5-509 provides, in pertinent part, as follows:

> (a) If the tax computed on an erroneous basis of valuation or assessment has been paid prior to certification of the corrected assessment by the assessor, the trustee or municipal collector shall, within sixty (60) days after receipt of such certification from the assessor, refund to the taxpayer that portion of such tax paid which resulted from the erroneous assessment, such refund to be made without the necessity of payment under protest or such other requirements as usually pertain to refunds of taxes unjustly or illegally collected.
>
> . . . .
>
> (f) Errors or omissions correctable under this section *include only obvious clerical mistakes*, involving no judgment of or discretion by the assessor, apparent from the face of the official tax and assessment records, *such as* the name or address of an owner, the location or physical description of property, misplacement of a decimal point or mathematical miscalculation, *errors of classification*, and duplicate assessment.

*Id*. (emphasis added). Under subsection (d), any "[c]orrection of assessments pursuant to this section must be requested by the taxpayer, or initiated by the assessor, prior to March 1, no more than the second year following the tax year for which the correction is to be made." *Id*. § 67-5-509(d). If, within thirty (30) days of the taxpayer's request, the assessor fails or refuses to correct the alleged error, "any person aggrieved thereby may appeal directly to the state board of equalization. . . ." *Id*. § 67-5-509(e). However, the appeal to the state board of equalization under this section must be "filed within forty-five (45) days after the assessor's failure or refusal to correct the error." *Id*. Subsection (d) further provides that, "[o]nce a suit has been filed for the collection of delinquent taxes pursuant to § 67-5-2405, the assessment and levy for all county, municipal and other property tax purposes are deemed to be valid and are not subject to correction under this section." *Id*. § 67-5-509(d).

In the Summer of 2000, Mr. Cain received the notice of assessment and tax bill for the year 1999. At Mr. Cain's request, Mr. Hunter went to the Assessor's office to seek an explanation and reach a resolution of this matter. During his discussion with Mr. Fox from the Assessor's office, Mr. Hunter was made aware that his attempt to have this matter resolved directly through the Assessor's office would be unsuccessful. By dispatching Mr. Hunter to the Assessor's office, Mr. Cain, although likely unintentionally, invoked the provisions of section 67-5-509. Although Mr. Cain brought his concerns to the attention of the Assessor, when he was made aware that the Assessor was either unable or not willing to correct his assessment, Mr. Cain failed to pursue the claim further.

In his brief, Mr. Cain asserts that section 67-5-509 does not apply in this case for two primary reasons. First, he argues that the statute was only designed to address errors in "assessment," not "classification." Mr. Cain contends that the parties here are only disputing the removal of greenbelt

classification and that there was no dispute as to the amount of the appropriate assessment. Accordingly, Mr. Cain claims that such disputes over "classification" would not come under the ambit of section 67-5-509. We find this argument tenuous at best. Next, Mr. Cain argues that 67-5-509 only addresses obvious clerical mistakes. He claims that the Assessor's misjudgment of the classification in this situation was an error in discretion and, hence, a matter expressly not within the scope of 67-5-509, pursuant to subsection (f) of the statute. *See* Tenn. Code Ann. § 67-5-509(f). We tend to agree that the Assessor's mistake here was the result of an error in judgment and discretion, and not a product of a clerical blunder. *See id.* Although the mistake at issue was an "error[] of classification," we believe it is not one that would be "apparent from the face of the official tax and assessment records.." *See id.* Clearly, when the Assessor made the decision to remove greenbelt status from the entire parcel, he was making a decision based upon information that, in his discretion, warranted such a reclassification. This type of action, we believe, does not fall under section 67-5-509 and is not comparable with the types of envisioned errors correctable under that section, such as an incorrect "name or address of an owner" or the "misplacement of a decimal point or mathematical miscalculation." *See id.* Thus, we conclude that section 67-5-509 does not serve as a bar to a potential appeal of an assessment by a taxpayer under the facts of this case. However, this conclusion does not end our analysis.

The final manner of appealing an error in assessment occurs where the claimed error raises purely legal issues. In that case, the taxpayer may bypass the administrative process altogether and proceed directly through the courts. *Fentress County Bank v. Holt*, 535 S.W.2d 854, 857 (Tenn. 1976); *Castlewood, Inc. v. Anderson County*, No. 03A01-9606-CH-00185, 1996 WL 722043, at *2 (Tenn. Ct. App. Dec. 17, 1996), *aff'd.*, 969 S.W.2d 908 (Tenn. 1998). If this course of procedure is chosen, however, the taxpayer is required, as a prerequisite to gaining access to the courts, to pay the disputed taxes under protest and sue for a refund. *Fentress*, 535 S.W.2d at 856–57; *Nashville Mem'l Hosp., Inc. v. Metro. Gov't of Nashville and Davidson County*, No. 89-400-II, 1990 WL 56198, at *2–4 (Tenn. Ct. App. May 4, 1990) (*no perm. app. filed*).

In this case, Mr. Cain did not pay the disputed taxes and initiate an action for their recovery. Rather, he did not participate in this matter until after Metro filed the underlying delinquent taxpayer lawsuit and a default judgment was entered against him. After the default judgment was set aside, Mr. Cain raised the issue of an erroneous classification through his answer and an "affirmative defense." Less than two weeks prior to trial, Mr. Cain paid, under protest, $10,000 into the clerk and master's office.[4]

Mr. Cain contends that he should be allowed to challenge the classification error as a defendant in the delinquent taxpayer action because the matter concerns a pure "legal issue." In support of his position, Mr. Cain relies on *Castlewood, Inc. v. Anderson County*, 1996 WL 722043,

---

[4]We note that Metro's delinquency tax action alleged a tax deficiency in an amount exceeding $60,000, and Mr. Cain paid $10,000 under protest prior to trial. In *Griffith Motors, Inc., v. King*, 641 S.W.2d 200, 201 (Tenn. 1982), the Tennessee Supreme Court held that "there is no authority for a taxpayer to pay only a portion of the tax liability assessed against him and then maintain a suit to litigate the entire assessment. . . ." *Id.*

at *2, for the proposition that the Assessor's error in classification was a legal issue, and, therefore, the trial court correctly permitted Mr. Cain to challenge that error at the trial level. *Castlewood, Inc.*, 1996 WL 722043, at *2. We believe, however, that Mr. Cain's reliance on *Castlewood* is misplaced. It is true that, where an erroneous assessment raises strictly legal issues, a taxpayer may proceed directly against the taxing authority through the courts. *Rosewood, Inc. v. Garner*, 476 S.W.2d 273, 276–77 (Tenn. Ct. App. 1971). However, the distinguishing characteristic of *Castlewood* and every other case we have found, is that, in those cases, the taxpayer, not the government, initiated the lawsuit in a timely manner. *See, e.g., Reeves v. Olsen*, 691 S.W.2d 527, 528 (Tenn. 1985); *Fentress County Bank*, 535 S.W.2d at 854; *Batson East-Land Co., Inc. v. Boyd*, 4 S.W.3d 185, 186–87 (Tenn. Ct. App. 1998). In our research, we have found no case, and Mr. Cain has cited to none, which holds that a taxpayer may sit on his or her rights and challenge an erroneous assessment only after an action to collect delinquent taxes is brought against the taxpayer. Rather, we believe that the weight of authority is that, in order to raise a legal issue through judicial review regarding the actions of a taxing authority, a taxpayer has certain courses of procedure that he or she must follow. *Fentress County Bank*, 535 S.W.2d at 857. A taxpayer may proceed according to section 67-5-509; he or she may pursue administrative remedies through the boards of equalization; or, if the matter involves purely legal issues, the aggrieved taxpayer may file suit for the recovery of taxes unjustly assessed and paid. *Id.*; *Rosewood,* 476 S.W.2d at 276–77. Here, Mr. Cain failed to pursue any of the available remedies. Therefore, we conclude that he is barred from challenging the assessments at this late stage in the proceedings. Accordingly, we reverse the trial court on this issue.

### Trial Court's Ruling Regarding Tax Years 2001, 2002, and 2003

Metro originally brought this delinquent tax lawsuit for the year 1999, and, by stipulation, the parties agreed that the trial court's judgment would also dispose of Metro's delinquency action brought for the year 2000. In the stipulation, the parties also agreed that, from the time Mr. Cain obtained greenbelt status for his 37.25 acre parcel, there had been no change in use of the property except for the 1.21 acre lot leased to CVS Pharmacy. Despite the fact that Metro brought this action only for tax years 1999 and 2000, the trial court ruled that its findings of fact and conclusions of law were to be "dispositive of these matters for the year 1999 through the [date of the final order] as there have been no changes in use of the 36.04 acres of [Mr. Cain's] property, which shall retain its Greenbelt classification." Metro argues that the trial court erred in making this finding because the taxes for years 2001, 2002, and 2003 were not before the court. Mr. Cain contends that, through the stipulation that the primary use of the property had not changed since greenbelt status was obtained and the fact that Metro failed to object to the final order, this issue was tried by consent. *See* Tenn. R. Civ. P. 15.02 (2003); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001).

We agree with Metro that this action was filed in order to collect property taxes for tax years 1999 and 2000. There is nothing in the record to support the trial court's finding that any issues involving tax years 2001, 2002, and 2003 were tried by consent. Therefore, we conclude that the evidence preponderates against such a finding and reverse on this issue.

### *Conclusion*

For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellee, John E. Cain, III, for which execution may issue if necessary.

 

_____

DAVID R. FARMER, JUDGE